The next case is 413-0720-WC, Senate Crown Mining, LLC v. Workers' Compensation Commission, David Harden. May it please the Court, my name is Dennis O'Brien. I represent Senate Crown Mining in this matter. Two issues were whether res judicata bars the claim or whether or not it's the finding of accident, causal connections against the manifest weight. Justice Hoffman, in the last argument, noted that the action by respondent notice just was not fair. And I think that that's true about this award. It's just not fair for the Commission to have awarded this against Senate Crown Mining. Is that a standard of review that we can take notice of? Manifest weight became just not fair. It's just not fair. A new rule is going to be announced. I think so. The question before the Court is whether Mr. Harden should receive the award against a subsequent employer for a condition which had already been decided by the Commission, was caused by an earlier employer, Freeman United Coal Mining Company. That case, he had litigated, he had said, my bilateral carpal tunnel syndrome is caused by my work of 13 years as a roof bolter. And he explained that in great detail. All of that's in this record also. And the arbitrator and the Commission said, yes, your carpal tunnel syndrome is caused by that work for Freeman United. What he was seeking was medical treatment. He wanted surgery. His doctor, Dr. Boyer-Wacky, had recommended bilateral carpal tunnel surgery. Mr. Harden wanted bilateral carpal tunnel surgery while working for Freeman United. That case went up to the Commission. The Commission affirmed that finding. Went to the appellate court. They confirmed that finding. And then it came to you. And you reversed the case. Not on accident. Not on causal connection. But on notice. They didn't give notice during the 45 days. He had the condition. It was caused by Freeman United. It was causally related to his accident, to his work there. But he couldn't recover against Freeman United because of notice. Well, Freeman United goes out of business. The mine is sold to another company. Another company mines the coal. That's Senator Crown. He works for them for a much shorter period of time. And he then files a claim against them for the exact same condition, carpal tunnel. So, you know, it's undisputed he had a preexisting condition. Why can't he recover for an aggravation of that preexisting condition? There's absolutely no objective evidence that he's worse. What did Dr. Boyer-Wacky say? Dr. Boyer-Wacky said his complaints are worse, but his objective findings, his physical examination, no different. The EMGs by Dr. Trudeau, both back with Freeman United, and now have exactly the same numbers. Seaman's work activities and repairmen could have worsened his carpal tunnel syndrome and contributed to the development of cubital tunnel syndrome? He said it could have, but there's no objective evidence of it. And he said that the natural progression is he will get worse. If he did nothing, he would get worse. Well, you started out by saying raised judicata applies, and now we've sort of moved into evidentiary consideration. So let me get back to raised judicata. Thank you. As you know, unlike the fairness doctrine, there are certain technical requirements to raised judicata. Absolutely. First and foremost, it has to be a final judgment between the same parties. I don't know that I'm seeing it here. How can you tell us that the same parties are involved in this case as the previous case? I believe it's the Freed case. It doesn't have to be the same respondent, as long as it's the same party who the doctrine is being used against. That is, Mr. Hardin is the same. He's making the same claim against a subsequent employer for the same problem that's already been litigated That's not raised judicata, that's collateral estoppel. That's correct. Raised judicata is nothing more than part of the rubric of collateral estoppel. It's estoppel by judgment or estoppel by verdict. And you're using raised judicata to mean only the party that it's aimed against has to have been the party in the first proceeding. That's collateral estoppel. That's not raised judicata. You need unity of parties for raised judicata. Under Freed v. Polk Brothers, the respondent doesn't have to be the same. Not for collateral estoppel, it doesn't. But it does for raised judicata. You have to have a unity of parties in subject matter. In collateral estoppel, you only need the party that it's aimed against has to have been a party to the prior proceedings, it has to have been decided on the merits, and the issue had to be necessary to the disposition. If you're using collateral estoppel, raised judicata, it just has to have been there. Under collateral estoppel, then it would also be part, Your Honor. Well, except for one problem. Dr. Rotman, didn't he note that the EMG that he performed in 2009 showed that the claimant's medium nerve latency had worsened and that the claimant's carpal tunnel syndrome and symptoms had progressed between 2005 and 2009? Did he say that? Dr. Rotman said that. Dr. Rotman was our examining physician. That's the same test that the treating surgeon said did not show. He quoted different numbers. He said, no, it's 5.3 to 5.3. And if you've got a contest amongst medical opinions, who gets to decide which one's right? The commission? Absolutely. Okay. So now the question becomes, is he actually suffering from the same condition that he had when he had the original case that you're talking about, or does he have an aggravated condition based upon Rotman's testimony? Upon Rotman, his interpretation of a test run by someone else, he thought that the numbers were different, that the treating physician looking at them, he literally, in the deposition, had them side by side and goes, 5.3 to 5.3, they're exactly the same. He also said that unlike the 2009 EMG, the 2005 EMG showed no ulnar neuropathy. That's correct. My argument in regards to res judicata does not affect the ulnar. We would agree that the ulnar nerve problems were not litigated in the original action, not in the least. What about the argument, didn't the claimant testify that we missed something, that beginning in March 2009 he was having new symptoms and new pain? Didn't he testify to that? He testified to that. His own surgeon said there's nothing objectively wrong. I'm not saying nothing objectively wrong. No objective worsening. His physical findings were exactly the same as they had been when he was working for Freeman United, when he litigated that first case. Who's Dr. Borowiecki? That is the petitioner's treating surgeon. He was the surgeon who back in the original case had recommended the carpal tunnel surgeries. And didn't he testify that it actually worsened since February 2006? No. Objectively, no. He said the man tells me that subjectively he's worse. But the test results are exactly the same. And his physical examination is exactly the same. Let's assume that's all true and you're 100% correct. Can the commission believe the claimant and that's the end of the case? Is that not a possibility under the law? Don't say no because that would be the wrong answer. The commission could believe that Martians caused this. Is there an object to test for pain? Absolutely not. Okay. That's why we take testimony. That's one of the many reasons, yes. Am I wrong in my notation that during his depositions, Borowiecki opined that the claimant's bilateral carpal tunnel syndrome had worsened since February 2006, both clinically and in terms of the claimant's complaints? That was on direct. On a cross-examination, he came back and said, no, there's been no objective change. Well, objective doesn't mean it isn't clinically. I mean, you know. I believe that clinical was meant to be objective. I mean, because if you do a physical examination and there's no objective change, where's the clinical change? Well, wait a minute. If you do an examination by moving the body parts around to find out when the guy yells for pain, you think that's objective? I don't think so. MRIs are objective. EMGs are objective. But examinations in the doctor's office are hardly objective. They're very subjective on the part of the doctor. He didn't point to any of that in any specific way. No, but he did say, both clinically and in terms of his complaints, it had worsened since February 2006. He said. He did say that, Your Honor. You're correct. In regards to causal connection and accident, Dr. Rotman also opined that this was not, that this did not constitute an accident. Williams v. Industrial Commission notes that you have to have a truly repetitive job. This man testified he did many different types of activities. Two days aren't alike. He doesn't do one action over and over and over again. And Dr. Rotman testified in his opinion that without a repetitive action, it would not be caused by the accident. So if we asked you to summarize precisely why the commission's decision is against the manifest way of the evidence, in some way, form, what would you tell us? This man had a preexisting condition. Objectively, it had not changed in the least. In addition, Dr. Rotman's testimony was that there was no causal connection, that this did not constitute an accident. So what you're saying, we should hone in on the, quote, unquote, objective, if you say clinical, as opposed to the claimant's subjective testimony. Which are quite self-serving, as you well know. And this is a man who's already. It would always be self-serving, wouldn't it? Yes, but this is a man who's already been in front of you, and you've already turned him down. He had his, on a technicality, he didn't get this paid for by his prior employer. He's now looking for a second bite at the apple for the same condition against another employer. Well, you turned him down on a technicality. Didn't you start out your argument under the fairness doctrine? Of course. Well, then, you can't have it both ways, can you? Well, no, probably not. Thank you for that candid review. Thank you. Thank you, Mr. O'Brien. Mr. Bichardi, you may respond. Mr. O'Brien, members of the court, I represent the employee, Mr. Hardin. I believe that, with respect to the legal issues before the court, collateral estoppel and res judicata did not apply. Res judicata for the reasons that Justice Hoffman identified. Collateral estoppel because the carpal tunnel condition that Mr. Hardin had, the employee, in 2009, was substantially different from what he had prior to that date. In 2005, he was seeking to obtain elective surgery. He was able to continue working. He was not having the symptoms that he had in 2009. In 2009, he returned to Dr. Borwicki, and Dr. Borwicki noted on clinical examination and also by Mr. Hardin's own reports that he was unable to continue doing his work. He was dropping his tools. His splints were no longer controlling his symptoms, and he had a severe exacerbation of the pain complaints he had had before. I think Dr. Borwicki misspoke when he discussed the objective testing of the EMG. Dr. Rotman obviously did not. And I think if you look at the numbers which we highlighted in our brief, Dr. Borwicki probably didn't catch the difference in the numbers, but they did show a worsening of the condition electrodiagnostically as well, and a severe one. Not only had the work he had been doing been- Wait a minute, just to make up a point. Sure. The doctor didn't catch- When he testified, when he reviewed the EMG, he didn't note the difference in the numbers apparently. He misspoke is what I believe he did. Okay. Dr. Borwicki is the one I'm referring to. Yeah. And Dr. Rotman acknowledged the numbers were more severe in 2009 than they were in 2000. And that's in the record? That's in the record, yes. And we pointed that out as well, the actual EMGs are in the record. So there is an electrodiagnostic worsening of this condition. He also has cubital tunnel syndrome. And the same operative effects are not present in this case as were present in the prior case. You're dealing with different employers. You're dealing with a different condition, which has become much more severe, and which has actually affected his ability to do his job. Almost a complete breakdown of his carpal tunnel in his hands. And for that reason, he sought additional treatment, and he could no longer wait for any other authorization, use his health insurance to get it done. He has, I think the evidence shows that the commission was correct, that his work activities were more hand intensive. They were extremely repetitive. Even though he may perform different activities and operate on different machinery on a day-to-day basis, his hands don't know the difference between a roof bolter and a miner when he's using a screwdriver, some sort of hand tool that he's forcefully gripping. The commission obviously felt that his testimony about the length of time that he did his work during the course of the day was more credible than the owner of the company's testimony that he did last time. And I think that is true here as well, because no owner is going to let people stand around doing two hours of work when they're hired to do a full day's work. The condition by Dr. Rotman's testimony, I think we've cited, as well as Dr. Borwicki's, was aggravated by those work activities. And even Dr. Borwicki indicated that repetitive, heavy work, forceful gripping, those types of things, could accelerate the symptoms and cause them to worsen. I believe the commission resolved all the conflicts in the evidence correctly and in favor of the petitioner here. And I think that the award is appropriate. If there's any questions about the specific evidence or the issues of ratio to counter collateral estoppel, I'd be happy to answer those for you. Thank you. Thank you. Okay. Thank you, Mr. Bryant. The court will stand. As this matter was taken under advisement, written disposition shall issue. The court will stand at 336.